## GRIM v. LEHIGH VALLEY COAL CO.

(Supreme Court, Appellate Division, Second Department. February 28, 1916.)

1. MASTER AND SERVANT ☞129—PERSONAL INJURY—MINES—PREPARATION TO PROP.

Plaintiff, injured in defendant's mine by coal falling upon him from the roof of a chute, while he was clearing a place to receive the prop, or inspecting the place preparatory to placing the prop, or just as he arrived at the place for that purpose, could not recover on the ground that defendant had not supplied him with props of a sufficient length, since, if the requisite prop had been at hand, it would not have been in place supporting the roof, and since the material fell because the prop was not there, and when the mine requirements, as well as the conditions, prohibited working until the prop should be placed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257-263; Dec. Dig. ☞129.]

2. MASTER AND SERVANT ☞118—PERSONAL INJURY—PREPARATION TO SET PROP—ASSURANCE OF SAFETY.

In such case, a promise of the district superintendent that plaintiff would be furnished props, and his direction to return to work, was not an assurance of safety, as plaintiff could not work until the props were at hand, except to make ready for them.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 202, 209; Dec. Dig. ☞118.]

3. DOMICILE ☞10—SUFFICIENCY OF EVIDENCE.

In a servant's action for injuries in defendant's mine in the state of Pennsylvania, evidence held sufficient to sustain jury's finding that he was a resident of the state when the action was begun.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 39; Dec. Dig. ☞10.]

Appeal from Trial Term, Westchester County.

Action by Joe Grim against the Lehigh Valley Coal Company. From a judgment for plaintiff, and from an order denying its motion for a new trial, defendant appeals. Judgment and order reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

Clifton P. Williamson, of New York City (Edward W. Walker, of New York City, on the brief), for appellant.

Martin T. Manton, of New York City, for respondent.

THOMAS, J. [1] Plaintiff, defendant's servant, was injured on September 14, 1911, in defendant's mine in the state of Pennsylvania, by coal falling upon him from the roof of a chute that led off from a mainway. It is urged in his behalf that the coal fell because the defendant had not supplied him with props of a sufficient length. There were, on the morning of the event, props lying nearby in the gangway for his use; but there is evidence that they were too short. But it appears beyond possible doubt that the insufficiency of the props was not the cause of the accident. Plaintiff was injured while cleaning a hole earlier prepared to receive the prop, or while inspecting the place preparatory to placing the prop, or just as he arrived at the place for that purpose. Had the requisite prop been at hand, it would not have been in place supporting the roof, inasmuch as the plaintiff would have been in the course of putting it in place. The material fell because the prop was not there; it was not there because the man was making final preparation to set it, or was surveying the conditions preparatory to setting it, or had just come there to set it.

What effect on the accident could have that the props in the gangway were too short, or that they were not there at all, if such had been the case? The system was to deliver props in the gangway or mainway; then the plaintiff and his fellows would haul them up into the breast or chute, and would put them up as occasion required. There was a prop a few feet from where plaintiff was hurt; a hole had been prepared for another prop. While plaintiff was contemplating that, or clearing it of refuse that had gathered or fallen in it, or was there for such purpose, the material fell. The proposition that the failure to furnish a proper prop permitted the roof to fall on the man who was making ready to put up such prop is not tolerable in law or logic. The plaintiff was not there to do work other than that relating to the erection of the prop. Rather, he could do nothing there until he should have established the prop. He and his companions knew that. They had quit work some days before because no props were there. The regulations of the mine, as well as the very conditions, prohibited work until the prop should be placed. They had come back at times to work, but found no suitable props, and, as they also say, an obstruction in the gangway that did not permit work. There was nothing for them to do in the way of mining coal until the prop should be set. The placing of it was the first thing in order. The plaintiff and Redmond, his co-worker, testify to a conversation, some days earlier, with Jones, the certified mine foreman, and Williams, the district superintendent, to the effect that props were needed, and that one or both promised to furnish them and told them to go to work, but that the props were not found in the gangway until the morning of the accident, and then not in suitable lengths. The super-

intendent had no charge of details, and if the fault was that of the certified foreman there can be no recovery.

[2] However, I will assume that the superintendent participated in the conversation whereby the plaintiff was promised props and directed to return to work. It is urged that he was assured safety, and hence returned to his labor. That is a misuse of a rule. He could not work until the props were in hand, save to make ready for them. He and his co-worker knew that. Therefore they did not work, but came and went, with a diversion elsewhere, for two days. When they did enter the breast, it was to perfect the place for the props, and to set them. How could an assurance that it was safe to work mean that the plaintiff would not be injured by falling material while he was erecting props to prevent it from falling? The plaintiff and his associates understood the situation, and acted very sanely by not trying to work until the props came, because the first and only rational thing to do was to insert them as supports against the falling of material. Administration of the law would go awry, did it permit a suitor to recover for injury received while necessarily doing, or about to do, an act to eliminate the cause of the injury.

[3] There is a question whether the plaintiff was a resident of the state when the action was begun. The jury has decided that he was. He was of foreign birth, and for many years employed by defendant in mines. When the accident happened, he was disabled for laboring; and, by accident or design, seemingly came under the influences that are bringing this and similar cases from other jurisdictions to this state. He was broken in body and a beggar in fact. He later sent for his wife and child. Wherever he slept was his residence for the night. Wherever he and his family found shelter was their home. He kept in the state because his greatest worldly interest, his lawsuit, was here. His intention can be inferred only from his acts. He probably had no conscious intention as to residence. His misfortune compelled the choice, and detained him here. The ascertainment of intention is usually a delicate process. In the present case there are such nice conceptions that the court cannot balance them and decide, but rather abides by the finding of the jury that has the function and presumed capacity.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.